***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission modifies and affirms the Opinion and Award of Deputy Commissioner Jones with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Defendant-employer is duly self-insured.
4. Plaintiff's date of birth is February 11, 1950 and she is fifty-two (52) years old.
5. The parties stipulated the following exhibits into the record:
a) Plaintiff's medical records as a portion of Stipulated Exhibit 1;
b) Industrial Commission Forms and filings relevant to this case a portion of Stipulated Exhibit 1;
c) Plaintiff's vocational records as Stipulated Exhibit 2;
d) An October 14, 1999 record from Gary G. Poehling as Stipulated Exhibit 3; and
e) Medical records of Dr. Grace Terrell as Stipulated Exhibit 4.
6. Plaintiff suffered an admittedly compensable injury on or about March 29, 1997.
7. The issues to be determined from this hearing are as follows:
a) Whether plaintiff is entitled to the medical compensation prescribed by her treating physician, Dr. Ruch, including a shoulder MRI and surgery if necessary, and other treatment which Dr. Ruch or his successor treating physician find reasonably necessary to treat the plaintiff or to provide her with relief from her compensable upper extremity injury or to diminish her disability;
b) Whether plaintiff was entitled to medical treatment for psychological injuries and depression she is experiencing as a result of her compensable injuries;
c) Whether plaintiff was entitled to reimbursement from the defendant-employer for tuition expenses she has incurred as a result of enrolling in the BSN/Masters in Nursing program at UNCG;
d) Whether plaintiff is currently disabled from earning wages and entitled to continuing TTD benefits since she has not reached MMI and has been unsuccessful in obtaining suitable employment despite engaging in a diligent job;
e) Whether plaintiff was entitled to an award of attorney's fees of $250.00 based on the Industrial Commission's June 27, 2002 Order Compelling discovery and awarding Attorney's Fees;
d) Whether plaintiff's average weekly wage for the 52 weeks proceeding her March 29, 1997 injury was $1,021.19, entitling her to a compensation rate of $512.00, the maximum compensation rate for 1997. If the Commission is unwilling to find that plaintiff's average weekly wage was $1,021.19 based on the plaintiff's testimony and relevant pay stubs, the plaintiff requests that the Deputy Commissioner order the defendant to produce a Form 22, pursuant to plaintiff's previous discovery requests;
e) Whether plaintiff was entitled to a entry of default or an Industrial Commission Order striking all defenses based on defendant's failure to comply with the Commission `s valid discovery orders as well as the Commission `s rules regarding the discovery procedures;
f) Whether plaintiff was entitled to additional benefits under theSeagraves decision whereby Plaintiff was dismissed from her job at High Point Regional Hospital; and
g) Whether plaintiff was entitled to an award of attorney's fees for plaintiff's Motion to Compel wherein plaintiff had already received the requested information?
 *********** EVIDENTIARY RULINGS
Plaintiff's Second Motion to Admit New Evidence is DENIED and Exhibit 1 dated October 30, 2003 is excluded from the transcript of evidence.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-two (52) years old and single with two (2) adult children. Plaintiff completed high school in 1969.
2. Plaintiff briefly worked in a textile plant after graduation and she remained at home to raise her children for several years after working in the textile plant.
3. In 1990, plaintiff completed a two (2) year associate degree in nursing. In September 1990, plaintiff began working as an operating staff nurse with defendant-employer.
4. From 1990 until 1999, plaintiff continued to work as an operating room staff nurse. In 1996, plaintiff was promoted to a Best Team position in defendant-employer's operating room. Nurses on the Best Team are surgical trauma nurses that work in the operating room.
5. On March 29, 1997, plaintiff suffered an admittedly compensable injury while she was working with another employee to lift and reposition a patient during surgery. While moving the patient, plaintiff heard a crunching sound in her right elbow and immediately felt pain in her arm and wrist.
6. Following the March 29, 1997 accident, plaintiff was treated by Dr. DeFronzo, an orthopedic and plastic surgeon. Initially, plaintiff was treated conservatively for approximately a year. On March 30, 1998, Dr. DeFranzo performed carpal tunnel release surgery on her right wrist. Plaintiff was out of work for three (3) weeks and then returned to work on light-duty.
7. In July 1998, Dr. DeFranzo performed a right lateral epicodyle and took plaintiff out of work for six (6) weeks and again placed her on light-duty with restrictions. Plaintiff was not to scrub in on surgical cases pursuant to Dr. DeFranzo's restrictions.
8. Plaintiff was assigned various light-duty assignments with defendant-employer until the end of October 2000. These assignments included administrative scheduling, endoscopy nurse and patient scheduling.
9. Dr. DeFranzo transferred plaintiff to the care of Dr. Poehling, chief of surgery at North Carolina Baptist Hospital, in February 1999. Dr. Poehling diagnosed plaintiff with complex regional pain syndrome secondary to the March 1997 compensable injury by accident. Dr. Poehling treated plaintiff conservatively for approximately ten (10) months.
10. In September 1999, Dr. Poehling ordered plaintiff to undergo a Functional Capacity Evaluation. Following the Functional Capacity Evaluation, plaintiff experienced an exacerbation of her right upper extremity symptoms. Dr. Poehling diagnosed plaintiff with right shoulder and neck pain which he concluded were exacerbated by the Functional Capacity Evaluation. Dr. Poehling further determined plaintiff's shoulder problems were part of her overall diagnosis of complex regional pain syndrome which was secondary to her March 1997 accident.
11. At the time of the hearing before the Deputy Commission, plaintiff continued to experience chronic pain in her right shoulder and elbow and frequently held her right shoulder in order to prevent movement. Plaintiff was very protective of her arm being moved, bumped or jostled.
12. Dr. Poehling noted plaintiff continued to experience right shoulder and neck pain and had difficulty performing work or functioning because of the pain and referred plaintiff to Robert Spillane, M.D., a pain management specialist at North Carolina Baptist Hospital, in July 1999. Dr. Spillane performed various nerve conduction studies which indicated nerve response abnormalities. Dr. Spillane also performed a stellate ganglion block which increased plaintiff's level upper right extremity pain. Dr. Spillane recommended a surgical consultation based on abnormal nerve conduction study findings.
13. Dr. Poehling recommended surgery not be pursued because of his concern the surgery would have aggravated her right upper extremity chronic regional pain syndrome symptoms.
14. In January 2000, Dr. Poehling referred plaintiff to David Ruch, M.D., at plaintiff's request. Dr. Ruch examined plaintiff and diagnosed her with cubital tunnel syndrome and status post-lateral epicondylar release. Dr. Ruch determined plaintiff would benefit from ulnar nerve transposition surgery.
15. On May 31, 2000, Dr. Ruch performed ulnar nerve transposition. This surgery reduced the pain in plaintiff's right elbow but did not decrease her right shoulder problems or increase her shoulder range of motion.
16. Dr. Ruch took plaintiff out of work for approximately three (3) weeks after the surgery. Dr. Ruch returned plaintiff to light-duty secretarial assignment using her left arm only. Over time, plaintiff was able to resume the light-duty assignment using both her right and left arms.
17. Plaintiff requested Dr. Ruch to release her to her pre-injury position as a Best Team surgical nurse in September 2000 so she could determine if she could return to work as a surgical trauma nurse. Dr. Ruch released plaintiff to return to work as a surgical nurse on a gradual basis in September 2000. Plaintiff returned to work in October 2000. During the initial return to work, plaintiff was only able to tolerate working four (4) hours every other day. Plaintiff progressed to working six (6) hours a day as a scrub trauma nurse. Following this increase in duties, plaintiff began experiencing chronic and debilitating pain in her right upper extremity including her shoulder.
18. On November 10, 2000, Dr. Ruch took plaintiff out of work and advised her not to return to work as a surgical nurse because of her upper extremity disabilities. Plaintiff requested Dr. Ruch give her a rating and permanent restrictions so that she would begin trying to find alternative employment. Dr. Ruch assigned a permanent partial disability rating of thirty-six (36%) percent to plaintiff's right upper extremity and restricted plaintiff from any overhead activities, lifting more than twenty (20) pounds and repetitive grasping and releasing in notations made on November 20, 2000.
19. Dr. Ruch continued to treat plaintiff for her upper extremity problems. In June 2001, Dr. Ruch recommended plaintiff undergo a MRI to determine whether she was a candidate for rotator cuff surgery since plaintiff's right shoulder problems could have been caused by holding her arm in an internally adducted and rotated position as result of her injury by accident. Dr. Ruch also indicated plaintiff's right shoulder problems also caused plaintiff suffer from complex regional pain syndrome.
20. At the time of the hearing before the Deputy Commissioner, Dr. Ruch indicated plaintiff had not reached maximum medical improvement and recommended a MRI to determine whether additional surgery could be done in order to provide a cure, relief or lessen plaintiff's period of disability. Dr. Ruch also recommended plaintiff obtain psychological treatment for signs of depression and difficulty coping with her chronic pain as well as her inability to return to work in her chosen profession.
21. Plaintiff sought other positions with defendant-employer since her unsuccessful attempt to return to work. Plaintiff applied for over ninety (90) positions with defendant-employer since November 2000 but was not offered any job.
22. Plaintiff also sought work with other employers. In October 2001, plaintiff was hired as a surgical unit nurse coordinator in High Point Regional Hospital. This was a supervisory position and plaintiff was told she would not have to perform direct patient care in this position. Plaintiff performed the surgical unit nurse coordinator position for four (4) months. In this job, plaintiff was required to perform direct patient care, including lifting and moving patients when the unit was short staffed. The nurse coordinator position also required plaintiff to perform significant keyboarding and repetitive overhead lifting of patient medical charts.
23. Plaintiff again began to experience pain and limited mobility in her upper right extremity in December 2001. Plaintiff reported these symptoms to Dr. Ruch and explained the requirements of her work with High Point Regional Hospital. Dr. Ruch removed plaintiff from the surgical unit nurse coordinator, completed a Form 28U in February 2002 and changed plaintiff's restrictions to lifting no more than ten (10) pounds, no repetitive flexation or extension of her right elbow, no repetitive grasping or release the right hand, no overhead lifting, no lifting or transporting patients and limited keyboarding.
23. After plaintiff's unsuccessful attempt as a surgical unit nurse coordinator, plaintiff continued to seek employment in the health care field and in other employment areas. Plaintiff has applied for approximately four hundred and ninety (490) jobs in her efforts to seek employment. Some of the jobs in the health care field area include supervisory and direct patient care positions such as a change nurse, long term care nurse, physicians' offices, school nurse, industrial nurse, case management, home health care and nurse educator.
24. In other employment areas, plaintiff applied for supervisory positions in fast food, retail, sales, childcare, telecommunications and the hotel industry. Outside High Point Regional Hospital, plaintiff has not been offered any positions in response to the numerous applications she has filed.
25. In July 2001, plaintiff contacted North Carolina Vocational Services to assist her with her job search. Jeanne Miller, a state vocational counselor, was assigned to plaintiff and recommended that she seek additional schooling in the form of a BSN or MSN as a way to compete for supervisory positions in the health care field. Ken James, plaintiff's current state vocational counselor, concurs with Jeanne Miller's assessment.
26. In July 2001, plaintiff enrolled full time in a BSN/MSN program at University of North Carolina in Greensboro. This program is a two (2) or three (3) year program.
27. Plaintiff is receiving physical accommodations from UNC's disability office in the form of voice activated software, lecture notes and a handicap parking pass so that she will not have to carry her books a great distance or for a prolonged period of time. Plaintiff has received no assistance in regards to tuition costs for this education. Plaintiff has received a commercial loan to pay for her tuition.
28. Plaintiff has continued to seek employment while she has been enrolled at the University of North Carolina at Greensboro. Plaintiff regularly uses the newspaper, employment web sites or the Internet in order to locate job opportunities.
29. Plaintiff has been advised by health care providers that it would be necessary for her to receive additional education in order to be able to obtain higher level management positions.
30. In May 2003, plaintiff participated in job seeking training seminars offered by North Carolina State Vocational Services Division. Plaintiff received outstanding marks for her participation in this program and was rated as having excellent interviewing in job readiness skills.
31. Plaintiff has been experiencing difficulty with sleeping and suffers from chronic pain and anxiety attacks since her injury by accident. Plaintiff's symptoms of depression have increased as result of her difficulty in finding employment as well as initial difficulties in returning to school. Plaintiff has difficulty concentrating and suffers from psychological problems caused by chronic pain secondary to her compensable injury by accident.
32. In 1996, plaintiff was diagnosed with situational depression. Plaintiff underwent psychological counseling and was released from counseling later in 1996. Beginning in 1998, plaintiff was treated for depression and anxiety caused by her compensable injury by accident and the resulting stress from chronic pain and other uncertainties.
33. Plaintiff's treatment with Dr. Terrell consisted of blood pressure monitoring and anti-depressant medication. Dr. Terrell referred plaintiff to Susan Stewart in 1999 for counseling for anxiety and depression secondary to her work place injuries.
34. Drs. Ruch, Terrell, Spillane, And Susan Stewart all opined that the emotional difficulty plaintiff is currently experiencing is directly related to her original compensable injury of March 29, 1997.
35. Ken James, a vocational rehabilitation specialist, was assigned to plaintiff's case in January 2003. During March, April and May of 2003, Mr. James assisted plaintiff in applying for over thirty-eight (38) jobs in the health care field and assisted plaintiff in locating and applying for an additional fifty-six (56) jobs that she primarily located herself. Plaintiff has not received job offers in regards to any of these efforts.
36. Defendant accepted liability relating to plaintiff's injury by accident of March 1997 and has paid all temporary total disability compensation and temporary partial disability compensation to date. Plaintiff has not reached maximum medical improvement and has been recommended to go for an MRI of her right shoulder as well as for psychological counseling.
37. The competent evidence in the record establishes that the plaintiff has used all good faith efforts to obtain other employment. It is clear that plaintiff will benefit from additional education such as the Bachelor of Science nursing program in which the plaintiff is currently enrolled. However, obtaining a Masters' Degree is not necessary to plaintiff obtaining suitable employment.
38. The competent evidence in the record further establishes that the plaintiff is entitled to continuing medical treatment, including a psychological evaluation and psychological counseling.
39. Dr. Ruch, plaintiff's treating physician, should continue as plaintiffs treating physician and plaintiff shall follow his recommendations.
40. Plaintiff's earnings prior to her accident were $1021.19 justifying payment of $512.00 the maximum compensation rate for 1997.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment and as a direct result of a specific traumatic incident of the work assigned on March 29, 1997. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, Plaintiff has been receiving temporary total disability compensation and temporary partial disability compensation, which is current to date. Temporary total disability compensation should continue at a rate of $512.00 until further order from this Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff has not reached maximum medical improvement as a result of the injury by accident and resulting conditions at this time. Plaintiff should continue to receive all medical treatment as directed by her treating physician, Dr. Ruch, including treatment for her right shoulder and for a psychological evaluation and counseling, so long as said treatment would effectuate a cure, provide relief or lessen plaintiff's period of disability. An MRI is appropriate to determine if additional surgery is necessary. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. The greater weight of the evidence indicates plaintiff would benefit from obtaining a Bachelor of Science in Nursing from the University of North Carolina at Greensboro to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25; 97-2(19).
5. Plaintiff has used all good faith efforts to comply with vocational rehabilitation whether it was through the North Carolina State Vocational Rehabilitation or through the vocational counselor that was assigned to plaintiff's case. N.C. Gen. Stat. § 97-25.
6. Defendant shall continue to provide vocational rehabilitation for plaintiff with Ken James and plaintiff should continue to cooperate with Ken James so long as plaintiff is physically able to proceed with vocational rehabilitation.
7. Defendant is ordered to pay plaintiff's counsel's fee in the amount of $250.00 as ordered by the North Carolina Industrial Commission on June 27, 2002 for defendant's failure to respond to answer or respond to plaintiff's second set of interrogatories. Workers' Compensation Rule 802.
8. Defendant has not defended this action without merit. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall continue paying temporary total disability compensation to plaintiff at the rate of $512.00 per week and continuing until the plaintiff returns to work or until further Order of the Commission. Compensation due which has accrued shall be paid in a lump sum subject to attorney's fees hereinafter provided.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury, including treatment for plaintiff's right shoulder and for a psychological evaluation and counseling, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. Defendant shall pay for and provide vocational rehabilitation for plaintiff with Ken James
4. Defendant is ordered to pay plaintiff's counsels attorney's fee in the amount of $250.00 as ordered by the North Carolina Industrial Commission on June 27, 2002 for defendant's failure to respond to answer or respond to plaintiff's second set of interrogatories.
5. Defendant shall pay for plaintiff's education at University of North Carolina at Greensboro for the Bachelor of Science in nursing but not the Masters' Degree.
6. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under paragraph one of this award is approved for plaintiff's counsel. Thereafter, every fourth check shall be deducted from the sum due plaintiff and paid directly to his counsel.
7. Defendant defended this action with merit.
8. Defendant shall pay the costs.
This the 3rd day of February, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER